1306

Karen Ann BOGAN, Respondent-Appellant v. Richard Keith BOGAN, Appellant-Respondent.

(378 S. E. (2d) 606)

Court of Appeals

*Steven M. Anastasion,* of *Callison, Tighe, Robinson & Anastasion,* Columbia, *for appellant-respondent.*

*Harvey L. Golden, Ken H. Lester,* and *J. Michael Taylor,* Columbia, *for respondent-appellant.*

Heard Feb. 13, 1989.

Decided March 13, 1989.

CURETON, Judge:

The wife brought this action to interpret and enforce an alimony provision of an Alabama divorce decree. The family court ordered the husband to pay additional accrued alimony of $36,840.00 for the years 1980 through 1985. Both parties appeal. We affirm.

The parties' divorce decree provides the husband will pay, in addition to $600.00 per month permanent fixed alimony, an additional amount equal to ten percent of his gross income exceding $68,000.00 annually. This additional alimony was to be paid annually beginning in 1980 and continuing for 12 years.

The husband is a physician with a specialty in pulmonary medicine. He is an employee and minority shareholder in a professional association (P.A.) which employs three other physicians. In addition to paying the husband a salary, the P.A. makes annual contributions to qualified retirement plans on the husband's behalf. The contributions made to the husband's account during the period 1980-1986 total $82,584.36.

The husband also receives salaries and consultation fees from Baptist Medical Center, Midlands Technical College, S. C. Department of Mental Health, and the University of South Carolina. He owns rental property and other non-medical business investments. These properties and invest-

ments produced a net loss of over $190,000 during the years 1980-1985.

The primary dispute in this case revolves around an interpretation of the term "gross income" as used in the Alabama divorce decree. As might have been expected, both parties produced tax experts who interpreted the term in a manner beneficial to the interest of their respective client. Wife's expert witness, an attorney and C.P.A., included in the husband's "gross income" (1) all salaries and consulting fees paid the husband, (2) an automobile allowance paid to the husband by his P.A., and (3) all the contributions paid by husband's P.A. to his retirement plans. He did not deduct husband's losses with respect to his non-medical properties and investments. He determined husband owed the wife $36,840.00 in additional alimony.

On the other hand, the husband's expert witness, also an attorney and C.P.A., testified the term "gross income" in this context meant husband's income from all sources, less costs to produce such income, less any losses from business activities. He made a distinction between "gross receipts" and "gross income" testifying gross income is generally considered to be net after expenses. He then concluded the husband owed the wife only $1,701.00 in additional alimony. In arriving at this figure, he included all income to the husband as reported on his tax returns. He deducted from this figure all expenses of earning the income and business losses incurred by husband on his non-medical properties and investments. Husband's pension and profit sharing contributions were not included in calculating his "gross income."

The trial court found "gross income" included all income received from the husband's practice of medicine including his automobile allowance and retirement contributions made by the P.A. on his behalf. It did not deduct investment losses from the husband's income. The court's computation of husband's "gross income" also did not allow for deduction of his non-reimbursed medical related business expenses.[1]

Husband argues on appeal the trial judge erred by (1)

---

[1] These expenses included expenses associated with attending lectures and automobile operating expenses.

including in his "gross income" contributions made by his P.A. to its qualified pension plans, (2) failing to deduct his nonreimbursed business expenses related to the practice of medicine, and (3) failing to deduct losses from business investments unrelated to the practice of medicine. The husband also argues the wife should not be awarded attorney fees because he acted in good faith by substantially complying with the alimony provisons of the divorce decree and the wife is capable of paying her own attorney fees.

The wife argues on appeal the family court erred in allowing husband to "deduct business expenses at the P.A. level." She argues that husband's "gross income" should include his percentage ownership of the gross receipts of the P.A. without deduction for operational expenses of the professional association. She also asserts the trial court erred by awarding her only a portion of the attorney fees she actually incurred.

The trial court found the disputed provision in the ■ Alabama divorce decree unambiguous. No exception was taken to this finding. Indeed, neither party argues the provision is ambiguous. An order should be construed within the context of the proceeding in which it is rendered. *Dibble v. Sumter Ice & Fuel Co.*, 283 S. C. 278, 322 S. E. (2d) 674 (Ct. App. 1984). We thus begin our analysis of the disputed provision by pointing out that while the term is found in a divorce decree, the decree was entered by consent of the parties and incorporated their agreement. Thus, we are essentially dealing with an agreement between the parties. Where an agreement is clear and capable of legal construction the court's only function is to interpret its lawful meaning and the intention of the parties as found within the agreement and give effect to them. *See Conner v. Alvarez*, 285 S. C. 97, 328 S. E. (2d) 334 (1985); *Trimble v. Todd*, 510 So. (2d) 810 (Ala. 1987). The language used in a decree must be given its ordinary and commonly accepted meaning. 27B C. J. S. *Divorce* Section 439 (1986). Where an instrument evidences care in its preparation, it will be presumed its words were employed deliberately and with intention. *Hellams v. Harnist*, 284 S. C. 256, 325 S. E. (2d) 569 (Ct. App. 1985); *see Terry Cove North, Inc. v. Balwin County Sewer Auth., Inc.*, 480 So. (2d) 1171 (Ala. 1985).

"The term 'gross income' does not carry the same definite

and inflexible meaning under all circumstances and wherever used. Its meaning depends upon the subject under consideration, the connection in which it was used, and the results intended to be accomplished." *Alexander v. Alexander*, 158 F. (2d) 429, 430 (10th Cir. 1946); *In re Etheridge*, 68 B. R. 235 (Bankr. C. D. Ill. 1986). Because this is an Alabama decree, we must look to see if the appellate courts of Alabama have interpreted the term in a domestic relations setting. *Epperson v. Epperson*, 437 So. (2d) 571 (Ala. Civ. App. 1983), involved a provision in a divorce decree which required wife's alimony be based on the husband's "gross income." The appellate court affirmed the trial court's inclusion of bonuses paid by the husband's employer in the husband's "gross income." In so doing the Court adopted the definition in *Webster's Third New International Dictionary*. The definition of gross income was held to be an "overall total amount exclusive of deductions." *Id.* at 573.

The North Carolina Court of Appeals in *Heater v. Heater*, 62 N. C. App. 587, 302 S. E. (2d) 891 (1983), defined the term "gross income" as used in a separation agreement providing that the husband shall pay an amount equivalent to 30% of his "gross income" as including gains realized from the sale of property. The Court said that while its thinking may have been influenced by the definition of "gross income" in the Internal Revenue Code, the "knowledge of the Code is so pervasive that the use of the words (gross income) includes in the minds of most people a gain on the sale of property." *Id.* at 588, 302 S. E. (2d) at 892; *Johnson v. Johnson*, 248 So. (2d) 195 (Fla. Dist. Ct. App. 1971) (gross income includes gains from sale of a business).

We agree with the North Carolina Court of Appeals that the Internal Revenue Code's definition of "gross income" is so generally known that it must have been in the minds of the parties when the term was inserted in the decree. Under Section 61(a) of the Internal Revenue Code "gross income" includes all income from whatever source derived.[2] This

---

[2] Section 61(a) includes *inter alia* pensions, annuities, gains from dealing in property, distributive share of partnership gross income, and compensation for services rendered whether commissions, fees, or fringe benefits in gross income. I. R. C. Section 61(a) (West 1988). On the other hand "adjusted gross income" represents gross income less certain deductions. *See* I. R. C. Section 62 (West 1988).

definition is consistent with *Webster's* definition and the interpretation placed on the term by the trial court.

There is clearly no merit to the wife's contention that we need only look to the husband's proportionate interest in the professional association and utilize that percentage of the P.A.'s gross receipts to determine his "gross income." The husband is an employee of the P.A. and the evidence does not show a relationship between his proportionate ownership in the P.A. and his salary. This case does not present the situation of a sole practitioner who simply channels his income through a professional association for tax or other purposes.

Finally, neither party is satisfied with the court's award of attorney fees. The husband claims the court awarded too much and the wife claims the court ordered too little. The family court considered the nature, novelty, complexity of the case, and the skill and reputation of the wife's attorneys. The court also fully evaluated the affidavits and other evidence regarding the value of the services rendered by wife's attorneys. The award of attorney fees rests within the sound discretion of the trial court and its decision will not be disturbed on appeal absent abuse of discretion. *Reid v. Reid*, 280 S. C. 367, 312 S. E. (2d) 724 (Ct. App. 1984). We find no abuse of discretion. While the wife did not receive a full fee, the record reflects she had substantial ability to pay her attorney fees.

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.

